IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

NOVEMBER 1997 SESSION



**FILED**

**July 29, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 01C01-9612-CR-00530 |
| | ) | |
| | ) | Davidson County |
| v. | ) | |
| | ) | Honorable Ann Lacy Johns, Judge |
| | ) | |
| THOMAS R. BALDWIN, | ) | (Attempted Second Degree Murder, |
| | ) | Aggravated Assault, Reckless |
| Appellant. | ) | Endangerment, and Unlawful Possession |
| | ) | of a Weapon) |

For the Appellant:

Karl Dean
District Public Defender
    and
J. Michael Engle
Assistant Public Defender
Stahlman Bldg., Suite 1202
Nashville, TN 37201-5066
(AT TRIAL)


Karl Dean
District Public Defender
    and
Jeffrey A. DeVasher
Assistant Public Defender
Stahlman Bldg., Suite 1202
Nashville, TN 37201-5066

For the Appellee:

John Knox Walkup
Attorney General of Tennessee
        and
Ellen H. Pollack
Assistant Attorney General of Tennessee
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493


Victor S. Johnson, III
District Attorney General
        and
Sharon Brox
Washington Square
222 2nd Avenue North
Nashville, TN 37201-1649

OPINION FILED:_____


AFFIRMED IN PART;  RECKLESS ENDANGERMENT CONVICTION REVERSED
AND CHARGE DISMISSED; AGGRAVATED ASSAULT SENTENCE MODIFIED


Joseph M. Tipton
Judge

**O P I N I O N**

The defendant, Thomas R. Baldwin, appeals as of right from his convictions by a jury in the Davidson County Criminal Court for attempted second degree murder, a Class B felony, aggravated assault with a deadly weapon, a Class C felony, reckless endangerment, a Class E felony, and unlawful possession of a weapon, a Class A misdemeanor. He was sentenced as a Range I, standard offender to twelve years for the attempted second degree murder conviction, four years and six months for the aggravated assault conviction, one year and six months for the reckless endangerment conviction, and eleven months and twenty-nine days for the unlawful possession of a weapon conviction.[1] The trial court ordered that the defendant serve his felony sentences in the custody of the Department of Correction and that the attempted second degree murder and aggravated assault sentences be served consecutively. The defendant presents the following issues for our review:

> (1) whether the evidence is sufficient to support the reckless endangerment conviction;
>
> (2) whether the trial court erred by allowing the reckless endangerment conviction separate from the attempted second degree murder and aggravated assault convictions;
>
> (3) whether the trial court erred by imposing excessive sentences for the attempted second degree murder and aggravated assault convictions and by ordering partial consecutive sentences.

We affirm the convictions for attempted second degree murder and aggravated assault. We reverse the conviction for felony reckless endangerment and dismiss the charge. We modify the defendant's sentence for aggravated assault to three years.

The defendant was charged with attempted first degree murder of Deborah Martin, aggravated assault of Eddie Clark, felony reckless endangerment, and unlawful possession of a weapon. At trial, Deborah Martin testified that she was

---

[1] The defendant raises no issue regarding this misdemeanor conviction.

working as a bartender at Eddie's Restaurant in Nashville on September 24, 1994. Martin said that the defendant came into the restaurant that night and began talking to her. Martin stated that she had never seen the defendant before that night. She said that she eventually noticed that the defendant was holding a gun and had placed the gun on the bar. She told him to put it up because it scared her. Martin testified that the defendant put the gun into his pocket. She said that the defendant told her that she was "going to go with him," and she said, "no." She testified that the defendant then shot her in the arm and asked her, "Did I hit you?" She said that she called 911, but the defendant left before the ambulance arrived. Martin stated that the only other person in the bar when the shooting took place was Eddie Clark, a customer. She stated that as a result of the shooting, she had to stay in the hospital nine days and she contracted pneumonia. She said that the bullet bounced off a bone in her arm, lodging in her trachea. Martin testified that she had seven operations, from which she had to have her teeth pulled.

On cross-examination, Martin stated that the defendant told her his name was Jim. She also admitted that she did not see the defendant pull the trigger because she was not directly facing him when she was shot.

Eddie Clark testified that he arrived at Eddie's Restaurant approximately three hours before the shooting occurred. He stated that the defendant had been in the bar for a couple of hours before the shooting and that the defendant was upsetting and bothering people. Clark stated that he could tell that the defendant had been drinking. Clark said that he stayed at the restaurant after everyone else had left because he did not want to leave Martin alone with the defendant. He testified that the defendant told him that Martin was "going to be his" but that she already had somebody. Clark stated that the defendant then shot Martin. He said that after the shooting the defendant laughed, then turned the gun on Clark and asked him if he had a problem. Clark

3

testified that he said, "no," and then ran outside to a pay telephone across the street to call 911. Clark said that as he was heading back toward the restaurant, the defendant came outside and drove away. Clark said the defendant was driving a 1971 or 1973 silver Pontiac Grand Prix.

Officer Marcia Brown of the Nashville Metropolitan Police Department testified that she was called to Eddie's Restaurant on September 24, 1994. She stated that she took photographs and collected evidence. Officer Brown said that she collected one shell casing from the bar and latent fingerprints from the countertop. An officer in the Latent Print Identification Section of the Nashville Metropolitan Police Department testified that a latent fingerprint lifted from the countertop of Eddie's Restaurant matched the defendant's fingerprint.

Sonny Propes testified that he arrived at Eddie's Restaurant around 4:00 or 5:00 p.m. on September 24, 1994, before the shooting. He stated that the defendant arrived at the restaurant an hour to an hour-and-a-half later and was very belligerent. Propes stated that he had never seen the defendant before that evening. Propes testified that he left before the shooting but that he heard about it later that night. He said that he went back to the restaurant to see what was happening, and he learned from Eddie Clark that the defendant had shot Martin and had driven away.

Propes testified that he later gave a description of the defendant to people who regularly attended the restaurant in case the defendant returned. He stated that on October 21, 1994, he was called to the restaurant to identify the defendant, who was at the restaurant. Propes testified that he immediately identified the defendant as the person who had been belligerent in the bar on the night of September 24, 1994.

4

Officer James Allen McGill, II, of the Nashville Metropolitan Police Department testified that he and other officers were dispatched to Eddie's Restaurant on October 21, 1994, on the report that a white male who was involved in a previous shooting at the restaurant was on the premises. He testified that when he arrived at the restaurant, two men met him outside and showed him a grey Pontiac Grand Prix that belonged to the defendant. He said that the men described the defendant and told him that the defendant was armed. Officer McGill stated that he entered the restaurant and saw the defendant sitting at the bar. He said that he and the other officers approached the defendant from behind and arrested him. He stated that while the officers were frisking him, the defendant reached toward his right front pocket. Officer McGill testified that when the defendant was subdued, he felt the defendant's right front pocket and found a .25 automatic pistol. Officer McGill testified that he unloaded the magazine and the chamber round and then took the defendant outside.

Detective Ed Shea testified that both Martin and Clark identified the defendant as the shooter from a photo array. A ballistics expert from the T.B.I. testified that the shell casing found in Eddie's Restaurant on the night of the shooting came from the gun obtained from the defendant.

Goldie Upton, the defendant's sister, testified that the defendant and his friend, Chester Hobby, were at her house in Lebanon until approximately 6:15 or 6:30 p.m. on the night of the shooting. She stated that it takes approximately an hour to get from her house to the defendant's apartment in Nashville. She testified that on September 24, 1994, she wrote in her calendar that the defendant and Hobby came to see her. She said that she also wrote "7:30 p.m.," which she said was when she lay down that night. She stated that the defendant called her some time after then. She testified that she knew that the defendant owned a pistol but that he did not have the pistol with him that day. She also stated that the defendant had not been drinking.

5

On cross-examination, Upton stated that she wrote "7:30 p.m." on the calendar when she got up. She admitted that in September 1994, she made no other notation about what time she got up from lying down. She also admitted that she told an investigator that she thought the defendant was an alcoholic.

Chester Hobby, a friend of the defendant, testified that he did not remember seeing the defendant drive in September 1994. He said that he drove the defendant to Upton's house on September 24, 1994, and that they left around 6:00 or 6:30 p.m. He stated that the defendant had not been drinking that day and that he did not see the defendant with a pistol that day. He testified that the defendant drove a blue Pontiac Grand Prix. Charles Upton, the husband of Goldie Upton and the defendant's brother-in-law, testified that the defendant and Hobby were at his house on September 24, 1994, and that they left around 6:15 p.m.

The defendant testified that Chester Hobby drove him to Lebanon to visit his sister on September 24, 1994. He stated that he and Hobby left at approximately 6:00 to 6:30 p.m., that they stopped in Nashville at a grocery store, and that he arrived at his apartment at 8:00 p.m. He said that he called his sister when he got home and remained in his apartment for the rest of the night. The defendant testified that he had not been drinking that day and that he did not go to Eddie's Restaurant that day. He stated that before the first court hearing, he had never seen Martin or Clark. He also stated that before October 21, 1994, he had never been to Eddie's Restaurant.

On cross-examination, the defendant admitted that it could have been 5:00 p.m. when he left his sister's house on the day of the shooting. He also admitted that he told Detective Shea that he did not remember what he was doing on the day of the shooting. He testified that he owned a two-tone blue Pontiac Grand Prix, but he stated that he did not drive during September 1994 because he was awaiting a hernia

6

surgery that took place two days after the shooting. He testified that he owned the gun admitted into evidence and that he carried it loaded everyday. Baldwin denied that he was an alcoholic but admitted that he was drinking when he was arrested at Eddie's Restaurant on October 21, 1994. Finally, the defendant reiterated on cross-examination that he had never been to Eddie's Restaurant before the day he was arrested, but he admitted later that he told Detective Shea that he had been to the restaurant once before his arrest. He explained that he misspoke when he was talking to Detective Shea and that he meant to say that he had been to Steve's Place, not Eddie's Restaurant.

## I

The defendant contends that the evidence presented at trial is insufficient to support his conviction for reckless endangerment because the evidence failed to prove that a specific individual was placed in imminent danger of death or serious bodily injury. The state argues that because the restaurant was small and narrow, and the bullet could have ricocheted off one of the metal appliances, striking Clark, the defendant committed reckless endangerment by placing Eddie Clark in imminent danger of death or serious bodily injury when he shot Deborah Martin. We agree with the defendant that the evidence is insufficient to support the conviction for reckless endangerment.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we may not reweigh the evidence, but must presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield,

7

676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Viewing the evidence in a light most favorable to the prosecution, we conclude that the evidence is insufficient to support the reckless endangerment conviction. The evidence presented at trial shows that when Martin was shot, the defendant was sitting at the bar, Martin was standing behind the bar, and Clark was sitting somewhere behind the defendant. This court has previously held that discharging a weapon under circumstances "where a stray bullet might possibly strike another person" is insufficient to support a conviction for reckless endangerment. See State v. Michael David Culbertson, No. 03C01-9412-CR-00449, Sullivan County, slip op. at 4 (Tenn. Crim. App. Aug. 30, 1996). In the instant case, mere speculation that Clark might have been hit by the bullet is insufficient to prove beyond a reasonable doubt that Clark was in imminent danger of death or serious bodily injury. Therefore, we reverse the conviction for reckless endangerment and dismiss the charge.

## II

The defendant also argues that his conviction for felony reckless endangerment was erroneous because it is essentially incidental to the convictions for attempted second degree murder and aggravated assault. See State v. Anthony, 817 S.W.2d 299 (Tenn. 1991). The defendant acknowledges that this argument was not raised in his motion for new trial. Normally, the failure to include an issue in the defendant's motion for new trial constitutes a waiver and bars appellate review. See T.R.A.P. 3(e). However, the defendant asks this court to review this issue under the plain error doctrine. See Tenn. R. Crim. P. 52(b); T.R.A.P. 13(b); State v. Adkisson, 899 S.W.2d 626, 637-38 (Tenn. Crim. App. 1994).

8

First, we note that the state's position at trial and now is that the circumstances in which the defendant shot Deborah Martin recklessly endangered Eddie Clark. If the facts were to reflect that in shooting one person, the defendant recklessly endangered a second person, we do not believe that the endangerment to the second person could be considered essentially incidental to the shooting of the first person. Due process under <u>Anthony</u> would allow for such dual convictions. Thus, there would not be plain error.

### III

Finally, the defendant contends that the sentences imposed by the trial court for attempted second degree murder and aggravated assault are excessive, and that the trial court erred by imposing them consecutively. Specifically, the defendant argues that the trial court erred by finding that certain enhancement factors existed, that no mitigating factors existed, and that the defendant should be sentenced consecutively because he is a dangerous offender. The state argues summarily that the trial court properly sentenced the defendant.

Appellate review of sentencing is <u>de novo</u> on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d) and -402(d). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. <u>State v. Fletcher</u>, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103 and -210 (1990); see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986).

The sentence to be imposed by the trial court is presumptively the minimum in the range unless there are enhancement factors present. T.C.A. § 40-35-210(c) (1990).[2] Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. T.C.A. § 40-35-210(d) and (e) (1990). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings

---

[2] For Class A felonies committed on or after July 1, 1995, the presumptive sentence is the midpoint of the range. See T.C.A. § 40-35-210(c).

are adequately supported by the record.  T.C.A. § 40-35-210 (1990), Sentencing

Commission Comments; <u>Moss</u>, 727 S.W.2d at 237; <u>see</u> <u>Ashby</u>, 823 S.W.2d at 169.


Deborah Martin testified at the sentencing hearing.  She stated that the

bullet entered her arm, hit a bone, and then went through her chest and lungs, lodging

in her trachea.  She said that she underwent nine operations on her throat, from which

she had to have her teeth pulled.  She also stated that she had trouble breathing and

experienced fatigue and nervousness.


A presentence report was introduced into evidence.  The report reflects

that the defendant dropped out of high school in the ninth grade.  It shows that the

defendant suffered from numerous health problems, including alcohol abuse.  The

defendant also reported that he served in the military from 1948 through 1954 and that

he held various odd jobs thereafter.  The report shows that the defendant had two prior

convictions for driving under the influence in 1995 and 1979.  The report indicates that

the defendant expressed remorse for Martin's health problems resulting from the

shooting.


At the conclusion of the sentencing hearing, the trial court sentenced the

defendant as a Range I, standard offender to consecutive sentences of twelve years for

the attempted second degree murder conviction and four years and six months for the

aggravated assault conviction.  The defendant also received concurrent sentences of

one year and six months for the felony reckless endangerment conviction and eleven

months and twenty-nine days for the unlawful possession of a weapon conviction.


In sentencing the defendant, the trial court applied the following three

hancement factors as listed in T.C.A. § 40-35-114 to enhance the defendant's

sentences for all of his convictions:

> (1) the defendant has a previous history of criminal convictions or behavior in addition to that necessary to establish his range;
>
> (10) the defendant had no hesitation about committing the crimes when the risk to human life was high; and
>
> (16) the defendant committed the crimes under which the potential for bodily injury was great.

The trial court gave little weight to factor (1). The trial court also stated that it gave great weight to factors (10) and (16). With respect to the attempted second degree murder conviction, the trial court found applicable enhancement factor (6), the victim's personal injuries were particularly great, and enhancement factor (9), the defendant possessed or employed a firearm during the commission of the offenses. See T.C.A. § 40-35-114. The trial court gave little weight to factor (9) but great weight to factor (6). The trial court found no mitigating factors.

## A

The defendant argues that the trial court erred by applying factor (1) to enhance his sentences for all four convictions, and by applying factors (10) and (16) to enhance the sentences for the attempted second degree murder and aggravated assault convictions. With respect to factor (1) for prior history of criminal convictions or criminal behavior, the presentence report reflects that the defendant had two prior convictions for driving under the influence, one in 1995 and the other in 1979. The defendant contends that this is not an adequate criminal history to justify enhancement. Specifically, the defendant argues that two prior misdemeanor convictions, one of which occurred more than fifteen years ago, do not constitute a history of criminal convictions or criminal behavior. We disagree. A defendant need not have an "extensive criminal history in order for enhancement factor (1) to apply. See State v. Norris, 874 S.W.2d 591, 601 (Tenn. Crim. App. 1993) (defendant's prior convictions for driving under the influence, disturbing the peace, and trespass were properly used to enhance defendant's aggravated assault conviction). In addition, we note that the defendant admitted at trial that every time he left his apartment he carried a loaded pistol with him.

12

The defendant's prior convictions coupled with his admitted history of criminal behavior are adequate to support the use of enhancement factor (1).

Next, the defendant argues that the trial court erred by applying factors (10) and (16) to enhance his sentences for attempted second degree murder and aggravated assault. The defendant contends that the trial court should not have applied these factors because they are essential elements of the offenses. See T.C.A. § 40-35-114. The test for determining whether an enhancement factor is an essential element of an offense is whether the same proof necessary to establish a particular element would also establish the enhancement factor. See State v. Jones, 883 S.W.2d 597, 601 (Tenn. 1994). The determination of whether a particular enhancement factor should be applied is made on a case-by-case basis. See State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

We agree with the defendant that the trial court erred by applying factors (10) and (16). This court has previously held that these factors cannot be applied when the offense is either aggravated assault with a deadly weapon or attempt to commit murder, because proof of the offense charged would necessarily involve proof of the enhancement factors. See State v. Hill, 885 S.W.2d 357, 363 (Tenn. Crim. App. 1994); State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995). However, factors (10) and (16) may be applied when there are others present besides the victim who were at risk because of the defendant's assaultive conduct. See State v. Sims, 909 S.W.2d 47, 50 (Tenn. Crim. App. 1995). The rationale is that when there are others at risk besides the victim, this demonstrates a culpability greater than that required to prove the specific offense. See Jones, 883 S.W.2d at 603.

In this respect, we determine that although someone else was present when the defendant committed the attempted second degree murder and the

13

aggravated assault, specifically Clark and Martin, respectively, neither was at risk as required by factor (10), nor was there great potential for bodily injury to either Clark or Martin as required by factor (16). The evidence shows that when the defendant shot Martin, the defendant was sitting at the bar, Martin was standing behind the bar, and Clark was behind the defendant. Under these facts, Clark was not placed at risk, nor was there great potential for bodily injury to Clark when the defendant shot Martin. Mere speculation that a bullet may have gone astray and struck Clark is not enough to justify the application of enhancement factors (10) and (16) under these facts.

In addition, although Martin was present when the defendant committed aggravated assault by aiming the gun at Clark, there is no evidence that she was at risk, nor was there any evidence of great potential for bodily injury to Martin. Again, Martin would have been behind the defendant when he committed the aggravated assault against Clark. Thus, although Clark was present when the defendant committed the attempted second degree murder, and Martin was present when the defendant committed the aggravated assault, we conclude that because neither was at risk and because there was no great potential for serious bodily injury, the trial court erred by applying factors (10) and (16).

**B**

The defendant contends that the trial court erred by failing to apply two statutory mitigating factors in sentencing. First, the defendant argues that the trial court should have found that he committed the offenses under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the conduct. See T.C.A. § 40-35-113(11). We hold that the trial court did not err by failing to apply this mitigating factor. Shootings may occur for illogical reasons or for no reason at all, particularly when the aggressor has been drinking. Furthermore, the defendant admitted at trial that his conduct was not unusual for him. He stated that he always

14

carried a loaded pistol whenever he went outside. In addition, when the defendant was arrested in the same bar where the shooting took place, he had been drinking and was carrying a loaded pistol. In the instant case, the shooting does not present an unusual circumstance as contemplated by T.C.A. § 40-35-113(11).

The defendant also argues that the trial court erred by failing to consider the defendant's poor health as a mitigating factor under T.C.A. § 40-35-113. We agree with the trial court that the defendant's argument would have more weight had the defendant not been "well enough to be out bar hopping, out drinking, carrying a gun around, and certainly putting lives in danger." We hold that the trial court did not err by failing to consider the defendant's poor health as a mitigating factor.

## C

In consideration of the record that is before us, we determine that for the attempted second degree murder offense, the following enhancement factors as provided in T.C.A. § 40-35-114 apply:

> (1) the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate sentencing range;
>
> (6) the personal injuries inflicted upon the victim were particularly great; and
>
> (9) the defendant employed a firearm during the commission of the offense;

We view all three factors to have substance, but the serious nature of the victim's injuries deserves the most consideration. Without the existence of mitigating factors, we believe that the twelve-year sentence imposed by the trial court remains appropriate.

Regarding the aggravated assault offense, only the defendant's previous history of criminal convictions and criminal conduct applies under enhancement factor

15

(1).  Under the circumstances of this case and the defendant's background relative to drinking and firearms, we determine that a sentence of three years in the Department of Correction is appropriate.

**D**

Finally, the defendant contends that the trial court erred by imposing consecutive sentences for the attempted second degree murder and aggravated assault convictions.  He argues that the trial court erred by finding him to be a dangerous offender and that he does not present a risk to society.

The Tennessee Supreme Court provided the standard for determining whether consecutive sentences are appropriate in State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995).  In Wilkerson, the court held that a consecutive sentence is not justified solely on a finding that the defendant is a dangerous offender.  Rather, the trial court must also find that the sentence is reasonably related to the severity of the offenses and is necessary to protect the public from further criminal acts by the defendant.  Wilkerson, 905 S.W.2d at 938.

The trial court found the defendant to be a dangerous offender based on the nature of the offenses, the defendant's prior convictions for driving under the influence, the defendant's failure to acknowledge the conduct, and the belligerence of the defendant on the witness stand at trial.  We affirm the trial court's determination that the defendant is a dangerous offender.  However, the trial court made no specific findings, as required by Wilkerson, that consecutive sentences were reasonably related to the severity of the offenses and were necessary to protect the public.

Nevertheless, we hold that the record supports the trial court's imposition of consecutive sentences.  The extensive physical injuries sustained by Martin as a

16

result of the defendant's conduct demonstrate that consecutive sentences are reasonably related to the severity of the offenses. In addition, the defendant's admitted criminal behavior warrants a finding that the sentences are necessary to protect the public. The defendant said that he always carried a loaded pistol when he left his apartment, and he admitted that when he was arrested he was in possession of the loaded pistol while drinking at the same bar where the shooting took place. We determine that the record supports the imposition of consecutive sentences because the defendant is a dangerous offender, the sentences reasonably relate to the severity of the offenses, and the sentences are necessary to protect the public.

## V

In conclusion, we reverse the judgment of conviction for felony reckless endangerment and dismiss the charge. We affirm the judgment of conviction for attempted second degree murder. We affirm the aggravated assault conviction, but the sentence is set at three years, to be served consecutively to the attempted second degree murder sentence.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
John H. Peay, Judge

_____
David H. Welles, Judge

17